## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

ROBERT JACKSON,                                  Case No. 1:21-cv-01325-PAB

        Plaintiff,

        -vs-                                     JUDGE PAMELA A. BARKER

TRANSPORT CORPORATION OF
AMERICA, INC., et al.,

        Defendants.                              MEMORANDUM    OPINION    AND
                                                 ORDER

This matter is before the Court upon the following: (1) Defendant Transport Corporation of America, Inc. ("Transport America") and Defendant Thelma Woods's ("Ms. Woods") (referred to collectively as "Defendants") Motion for Partial Summary Judgment to Cap Non-Economic Damages (Doc. No. 40); (2) Defendants' Motion for Partial Summary Judgment on Punitive Damages (Doc. No. 41); and (3) Transport America's Motion for Partial Summary Judgment on Negligent Entrustment, Negligent Hiring, Supervision, and/or Retention, and Negligent Inspection and Repair (Doc. No. 42).  Plaintiff Robert Jackson (hereinafter "Mr. Jackson" or "Plaintiff") filed a combined Brief in Opposition on January 17, 2023, to which Defendants filed a combined Reply on January 30, 2023.  (Doc. Nos. 53, 55.)  Also pending is Plaintiff's Motion for Leave to File Disclosure of Experts Out of Time.  (Doc. No. 48.)  Defendants filed a combined Brief in Opposition and Motion in Limine to Exclude Improperly Disclosed Experts on January 30, 2023, to which Plaintiff filed a Reply on February 6, 2023.  (Doc. Nos. 54, 56.)

For the following reasons, the Court GRANTS IN PART and DENIES IN PART Plaintiff's Motion for Leave to File Disclosure of Experts Out of Time (Doc. No. 48) and GRANTS Defendants'

Motion in Limine to Exclude Improperly Disclosed Experts (Doc. No. 54).  Additionally, the Court GRANTS Defendants' Motions for Partial Summary Judgment to Cap Non-Economic Damages (Doc. No. 40); on Punitive Damages (Doc. No. 41); and on Negligent Entrustment, Negligent Hiring, Supervision, and/or Retention, and Negligent Inspection and Repair (Doc. No. 42).

## I. Background

On May 20, 2019, Transport America hired Ms. Woods as a "student" company driver.  (Aff. of Scot Rambo (Doc. No. 40-4) at ¶ 5.)  (*See also* Deposition of L. Sellner (Doc. No. 44-1) at Tr. 130.)  Prior to hiring Ms. Woods, Transport America conducted a background check and reviewed her employment application.  (Rambo Aff. at ¶ 4.)  Ms. Woods had no moving violations or motor vehicle accidents in the three years before Transport America hired her.  (*Id*. at ¶ 6.)  She also had a valid Class A Commercial Driver's License ("CDL"), as she had recently completed a 160-hour course with C.R. England.  (Sellner Dep. at Tr. 136.)  Other than the 160-hour course she completed to receive her CDL, Ms. Woods had no experience as a commercial truck driver.  (*Id*. at Tr. 136.)

After hiring Ms. Woods, Transport America required her to complete 41 different training modules.  (*Id*. at Tr. 146.)  These modules consisted of reviewing PDF documents and watching videos.  (*Id*. at Tr. 64.)  Ms. Woods completed most of the modules in less than two minutes.  (*Id*. at Tr. 147.)  Ms. Woods completed one road test during her first day of orientation.  (*Id*. at Tr. 148.)  As she recently had received her CDL, Transport America assigned her a trainer for 21 days.  (*Id*. at Tr. 153.)  Ms. Woods completed additional road tests with the trainer every day of the 21-day training program.  (*Id*.)  While her trainer noted some deficiencies (such as taking right turns too wide and having trouble backing up), Ms. Woods successfully completed the training program on June 18, 2019.  (*Id*. at Tr. 168, 170-71.)

2

After Ms. Woods completed the training program, Transport America reclassified her as an "on-the-road" driver, meaning she could operate a tractor-trailer by herself.  (Rambo Aff. at ¶ 13.) Between June 15, 2019, and July 17, 2019, Ms. Woods was involved in three accidents.  (Sellner Dep. at Tr. 174.)  In the first, Ms. Woods hit a pothole on the highway.  (*Id*. at Tr. 175.)  Transport America deemed this accident "non-preventable."  (*Id*.)  In the second accident, Ms. Woods did not lower her trailer's landing gear all the way and dropped her trailer.  (*Id*.)  Transport America sent Ms. Woods to one day of remedial training after this accident.  (*Id*.)  (*See also* Deposition of T. Woods (Docket No. 45-1) at Tr. 31.)  The third accident occurred on July 10, 2019, and it is the subject of this lawsuit (Woods Dep. at Tr. 82.)

On the evening of July 10, 2019, Ms. Woods stopped at a TA truck stop in Seville, Ohio.  (*Id*. at Tr. 83.)  (*See also* Deposition of R. Jackson (Doc. No. 43-1) at Tr. 89.)  Ms. Woods was going to park and shut down her tractor-trailer to rest through the night.  (Woods Dep. at Tr. 84.)  The truck stop had multiple parking spots for tractor-trailers.  (*Id*.)  Ms. Woods identified the spot she wanted to park in, and she began to pull forward so that she could then back into the space.  (*Id*. at Tr. 85.) Parked next to her chosen spot was another tractor-trailer.  (*Id*. at Tr. 86.)  Mr. Jackson was in this tractor-trailer and asleep in his sleeping berth.  (Jackson Dep. at Tr. 93.)  As Ms. Woods was pulling forward at less than ten miles per hour, she struck the front of Mr. Jackson's tractor with the passenger side of her trailer.  (Woods Dep. at Tr. 86.)  After the collision, Ms. Woods first called the police and then Transport America to advise the fleet manager of the accident.  (*Id*. at Tr. 101-02.)  Transport America fired Ms. Woods three days later.  (Sellner Dep. at Tr. 133.)

As noted above, at the time of the accident, Mr. Jackson was asleep in his tractor's sleeper berth.  (Jackson Dep. at Tr. 92.)  The sleeper berth is at most four feet off the ground, six feet long,

3

and four feet wide. (*Id*. at Tr. 71.) It is located behind the tractor's two front seats. (*Id*. at Tr. 92.) Mr. Jackson was lying down with his head behind the driver's seat. (*Id*.) He awoke to the sound of Ms. Woods's tractor by his passenger side door. (*Id*. at Tr. 93.) Mr. Jackson sat up and leaned over the edge of his bunk. (*Id*. at Tr. 96.) Through the passenger window, he saw Ms. Woods's tractor-trailer edging closer. (*Id.*) Ms. Woods's trailer then struck Mr. Jackson's tractor, and Mr. Jackson fell to the floor on his left shoulder between the two front seats. (*Id*. at Tr. 98-99.) As the tractor has an air suspension, the cab began to rock side to side from the impact. (*Id*. at Tr. 97.) When Mr. Jackson stood back up and reached for the ignition on the left side of the steering wheel to turn off his running tractor, he fell a second time over the driver's seat. (*Id*. at Tr. 102.)

After the accident, Mr. Jackson filed an accident report with his employer. (*Id*. at Tr. 140.) Mr. Jackson then stayed the night in a nearby hotel. (*Id*. at Tr. 136.) The following day, his employer sent a shuttle, which brought him to a location south of Cleveland, Ohio, to pick up a rental tractor. (*Id*. at Tr. 136, 145.) Mr. Jackson then drove the rental tractor back to Seville, Ohio, to pick up his trailer. (*Id*. at Tr. 146.) After picking up his trailer, he drove directly to Atlanta, Georgia. (*Id*.)

During the week after the incident, Mr. Jackson saw Alejandro Alam-Gonzalez, M.D., at Concentra Medical Centers in Atlanta. (*Id*. at Tr. 149.) Mr. Jackson complained of a sharp pain in his neck and left shoulder. (*Id*. at Tr. 151.) Dr. Gonzalez ordered x-rays and physical therapy. (*Id*. at Tr. 153.) On July 30, 2019, Mr. Jackson completed his last physical therapy session, and Dr. Gonzalez released Mr. Jackson to return to work. (*Id*. at Tr. 157.) Mr. Jackson still felt a numbness and tingling in his hands and pain in his neck, so he sought a second opinion. (*Id*. at Tr. 159, 165.) On August 16, 2019, Mr. Jackson met with Mark A. Flood, M.D. (*Id*. at Tr. 164.) Dr. Flood recommended fusion surgery on Mr. Jackson's neck and advised Mr. Jackson that he may need to

4

use a wheelchair.  (*Id*. at Tr. 165.)  Concerned about the prospect of having to use a wheelchair, Mr. Jackson sought another opinion.  (*Id*. at Tr. 168.)  On September 10, 2019, he met with S. Tim Yoon, M.D., at Emory University.  (*Id*. at Tr. 169.)  Dr. Yoon also recommended fusion surgery but proposed a second option: the installation of titanium bands in his neck.  (*Id*. at Tr. 170-71.)  Mr. Jackson elected for the titanium band alternative.  (*Id*.)  He completed the surgery on January 2, 2020, without any complications.  (*Id*. at Tr. 174.)  Mr. Jackson testified that he continues to feel pain in his neck and shoulder, tingling, and a heaviness in his limbs.  (*Id*. at Tr. 175-77.)

## II.    Procedural History

On July 8, 2021, Plaintiff filed his Complaint against Transport America and Ms. Woods, alleging the following six counts: (1) ordinary negligence; (2) negligence per se; (3) imputed liability; (4) negligent hiring, entrustment, retention, supervision, and training; (5) negligent inspection, maintenance, and repair; and (6) exemplary/punitive damages.  (Doc. No. 1.)  On August 26, 2021, Defendants filed an Answer.  (Doc. No. 7.)

The Court held a Case Management Conference on October 7, 2021, at which time the Court set case management deadlines.  (Doc. No. 16.)  Specifically, the Court ordered that (1) non-expert discovery be completed by March 15, 2022; (2) initial expert reports be exchanged on or before February 15, 2022; (3) responsive expert reports be exchanged on or before May 15, 2022; and (4) expert discovery be completed by July 29, 2022.  (*Id*.)  In addition, the Court set a dispositive motion deadline of August 31, 2022.  (*Id*.)

On October 15, 2021, Plaintiff provided Defendants with his Rule 26 initial disclosures.  (Doc. No. 54-1.)  Therein, Plaintiff identified several medical professionals as individuals likely to have personal knowledge regarding his medical care and treatment.  (*Id*.)  Among these medical

5

professionals was Dr. Yoon, who Plaintiff identified as working at the Emory Orthopedics & Spine Center.  (*Id.*)  Plaintiff's initial disclosures did not expressly identify any expert witnesses.  (*Id.*)

In the following months, Defendants propounded discovery requests asking Plaintiff to identify his expert witnesses.  (Doc. Nos. 54-2, 54-3.)  In response, Plaintiff responded that he "will disclose his expert witnesses in accordance with the pretrial order of this Court" and represented that he "may call each and every one of [Mr. Jackson's] treating medical providers."  (*Id.*)  Plaintiff reserved the right to supplement his discovery responses, but he never did.  (*Id.*)

On February 15, 2022 (the day of the initial expert deadline), Plaintiff requested a thirty-day extension to disclose his expert reports.  (Doc. No. 54-4.)  Although not reflected on the docket, the parties assert that they mutually agreed to extend Plaintiff's initial expert report deadline to March 31, 2022, and to extend the deadline for Defendants' responsive expert reports to June 30, 2022.  (*Id.*)  Plaintiff did not disclose any expert witnesses or reports by March 31, 2022.  Nor did Plaintiff provide a summary of the facts and opinions of Dr. Yoon or any of his other treating physicians.

On September 22, 2022, upon motion of the parties, the Court extended the dispositive motion deadline to November 14, 2022.  (*See* Non-Doc Order dated Sept. 22, 2022.)

On November 14, 2022, Defendants filed Motions for Partial Summary Judgment to Cap Non-Economic Damages, and on Punitive Damages, Negligent Entrustment, Negligent Hiring, Supervision, and/or Retention, and Negligent Inspection and Repair.  (Doc. Nos. 40-42.)  On December 1, 2022, Plaintiff requested until January 16, 2023, to respond to Defendants' Motions, which the Court granted.  (Doc. Nos. 46, 47.)  On January 16, 2023, Plaintiff filed a Motion for Leave to File Disclosure of Experts Out of Time.  (Doc. No. 48.)  On January 17, 2023, Plaintiff filed a combined Brief in Opposition to Defendants' Motions for Partial Summary Judgment.  (Doc. No.

6

53.)  On January 30, 2023, Defendants opposed Plaintiff's Motion for Leave to File Disclosure of Experts Out of Time; filed a Motion in Limine to Exclude Plaintiff's Improperly Disclosed Experts; and filed a Reply in support of their Motions for Partial Summary Judgment.  (Doc. Nos. 54, 55.) Lastly, on February 6, 2023, Plaintiff filed a Reply in support of his Motion for Leave to File Expert Disclosures Out of Time.  (Doc. No. 56.)

## III.   Law and Analysis

### A.  Plaintiff's Motion for Leave to File Disclosure of Experts Out of Time

Because  Plaintiff's  Motion  for  Leave  to  File  Disclosure  of  Experts  Out  of  Time  and Defendants' Motion in Limine to Exclude Improperly Disclosed Experts have a direct bearing on at least one of Defendants' Motions for Partial Summary Judgment, the Court will address them first.

In  his  Motion,  Plaintiff  acknowledges  that  he  is  "out  of  time"  but  asks  this  Court  to nonetheless  grant  him  leave  to  disclose  the  following  three  expert  witnesses:  (1)  Dr.  Yoon;  (2) orthopedic surgeon Jonathan Paley, M.D.; and (3) vocational expert Taylor Pytlik, MRC, CRC, CCM, CVE, IPEC.  (Doc. Nos. 48, 48-1.)  Plaintiff argues that his failure to meet the parties' agreed-upon expert disclosure deadline of March 31, 2022, was the result of "excusable neglect."  (Doc. No. 48.) He maintains that his failure to timely disclose his expert reports was due to "technological issues related to the undersigned's server, email and calendar servicer" in December 2022.  (*Id.* at p. 2.) Additionally, Plaintiff suggests that the delay was justified because he hoped to settle the case during a private mediation session on December 19, 2022, but the mediation was ultimately unsuccessful. (*Id*. at p. 3.)  Lastly, Plaintiff argues that, because the Court has not set a trial date, any delay cannot negatively impact a nonexistent trial date.  (*Id*.)  Plaintiff requests that the Court grant "an extension

7

of expert discovery in this matter to encompass the experts and treaters at issue," and indicates that he is "agreeable to whatever mutual extensions for Defendants in this matter." (*Id*.)

In response, Defendants argue that Plaintiff failed to timely disclose the subject matter on which Dr. Yoon was expected to testify (including a summary of his opinion) but concede that Dr. Yoon's untimely disclosure is harmless. (Doc. No. 54 at p. 7.) They do, however, ask the Court to limit Dr. Yoon's testimony to the content of Plaintiff's medical records with Dr. Yoon. (*Id*.) Regarding Dr. Paley and Ms. Pytlik, Defendants assert that "there is absolutely no justification" for the untimely disclosures of these experts. (*Id.*) Defendants argue that Plaintiff's excuses are inadequate and that Dr. Paley's and Ms. Pytlik's untimely disclosures harm and unfairly prejudice them. (*Id*. at pp. 7-9.) Finally, Defendants argue that Dr. Paley's expert opinion is cumulative to Dr. Yoon's opinion, as both are orthopedic surgeon experts. (*Id*. at p. 9.)

In his Reply, Plaintiff argues that he is not acting with any malice or bad faith and that his "request is simply allowing the instant matter to be decided on the merits." (Doc. No. 56 at p. 1.) He requests that the Court "set a scheduling conference to set an immediate discovery time period and grant Defendants necessary time to rebut Plaintiff's experts." (*Id*. at p. 3.)

Federal Rule of Civil Procedure 26(a)(2) requires "a party to disclose to the other parties the identity of any witness it may use at trial to present" expert witness opinion testimony. If the party "retain[s] or specially employ[s]" the witness to provide expert testimony or if the witness's duties "regularly involve giving expert testimony," a written report must accompany the party's disclosure. Fed. R. Civ. P. 26(a)(2)(B). If a witness does not need to provide a written report, the party's disclosure must still include "the subject matter on which the witness is expected to present evidence" and "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ.

P. 26(a)(2)(C).  Parties must make the above disclosures "at the times and in the sequence that the court orders."  Fed. R. Civ. P. 26(a)(2)(D).

Federal Rule of Civil Procedure 37(c)(1) governs what happens if a party fails to make the required expert disclosures.  If a party does not timely disclose its expert, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing or at trial."  Fed. R. Civ. P. 37(c)(1).  The only exception is if the failure to disclose was "substantially justified or is harmless." *Id*.  Rule 37(c)(1) requires "absolute compliance with Rule 26(a), that is, it 'mandates that a trial court punish a party for discovery violations in connection with Rule 26 unless the violation was harmless or is substantially justified.'"  *EQT Prod. Co. v. Phillips*, 767 F. App'x 626, 634 (6th Cir. 2019) (quoting *R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262, 271 (6th Cir. 2010)).

The Sixth Circuit has adopted five factors for a court to evaluate in determining whether an omitted disclosure is substantially justified or harmless:

> (1) the surprise to the party against whom the evidence would be offered;
> (2) the ability of that party to cure the surprise;
> (3) the extent to which allowing the evidence would disrupt the trial;
> (4) the importance of the evidence; and
> (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015) (citing *Russell v. Absolute Collection Servs.*, 763 F.3d 385, 397 (4th Cir. 2014)).  This Court has "broad discretion in applying these factors and need not apply each one rigidly."  *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019) (quoting *Bentley v. Highlands Hosp. Corp.*, 2016 U.S. Dist. LEXIS 139414 at *30 (E.D. Ky. Oct. 6, 2016) (Thapar, J.)).  Their purpose is to "separat[e] 'honest,' harmless mistakes from the type of 'underhanded gamesmanship' that warrants the harsh remedy of exclusion."  *Id*.  The burden is on

Plaintiff to prove that his noncompliance was harmless or justified.  *R.C. Olmstead, Inc.*, 606 F3d at 272.

With this standard in mind, the Court will separately address the parties' arguments with respect to Dr. Yoon, Dr. Paley, and Ms. Pytlik below.

### a.  Dr. Yoon

As noted above, Defendants acknowledge that they were on notice that Dr. Yoon was an individual with discoverable information about Mr. Jackson's medical care and treatment, as early as Plaintiff's initial disclosures in October 2021.  (Doc. No. 54 at p. 7.)  They concede that Plaintiff's failure to timely disclose Dr. Yoon as an expert witness was therefore harmless, but they seek to limit Dr. Yoon's testimony to "what is identified in Plaintiff's medical records with Dr. Yoon."  (*Id.*)  Plaintiff does not acknowledge or address this issue in his Reply.  (Doc. No. 56.)

The Court finds as follows.  Both parties agree that Dr. Yoon, as a treating physician, falls under the class of experts in Rule 26(a)(2)(C)—meaning he is not required to provide a written report. The Court also agrees.  Even so, Plaintiff must still provide the disclosures in Rule 26(a)(2)(C), i.e., "the subject matter on which the witness is expected to present evidence" and "a summary of the facts and opinions to which the witness is expected to testify."  Here, the "Expert Designation" attached to Plaintiff's Motion states that Dr. Yoon will opine as to (1) "the extent of the Plaintiff's treatment," (2) "future required treatment," (3) "permanency," and (4) "inability to return to full-time commercial truck driving work."  [1]  (Doc. No. 48-1.)

_____

[1] Even this disclosure is likely insufficient.  Rule 26(a)(2)(C) requires disclosure not only of the subject matter but also of both the facts and the *opinions* that the expert will testify about.  *See, e.g., Little Hocking Water Ass'n v. E.I. du Pont de Nemours & Co.*, 2015 U.S. Dist. LEXIS 29918 at *24 (S.D. Ohio Mar. 11, 2015) (finding that disclosures "which merely state the topics of the opinions to which the expert will testify" do not satisfy the Rule).  As Defendants do not contest this point, the Court will not address it.

10

A Rule 26(a)(2)(C) treating physician may only testify "within a permissive core on issues pertaining to treatment, based on what he or she learned through actual treatment and from the plaintiff's records up to and including treatment." *Fielden v. CSX Transp., Inc.*, 482 F.3d 866, 871 (6th Cir. 2007) (explaining that to do otherwise "would permit circumvention of the policies underlying the expert report requirement").  So, by disclosing Dr. Yoon as a Rule 26(a)(2)(C) expert witness, Plaintiff necessarily limited Dr. Yoon's testimony to issues pertaining to his treatment of Mr. Jackson.  Accordingly, the Court grants Defendants' Motion in Limine to the extent that Dr. Yoon may only testify to Mr. Jackson's treatment, and Dr. Yoon must base his testimony on what he learned through treating Mr. Jackson and on Mr. Jackson's medical records up to and including treatment.

### b.  Dr. Paley and Ms. Pytlik

Dr. Paley and Ms. Pytlik present different issues.  First, both are Rule 26(a)(2)(B) expert witnesses that prepared and signed expert reports.  (Doc. Nos. 54-5, 54-6.)  Second, Plaintiff did not disclose their identities until July 29, 2022, and did not disclose their reports until January 16, 2023.  (Doc. No. 48-1.)  The question therefore is whether Plaintiff's untimely disclosure of these two experts and their reports was harmless or substantially justified.  The Court will address each of the *Howe* factors in turn.

First is the surprise to Defendants.  Unlike Dr. Yoon, who appeared in Plaintiff's initial disclosures, there is nothing in the record to suggest that Defendants knew or could have known about Dr. Paley and Ms. Pytlik.  *See Abrams v. Nucor Steel Marion, Inc.*, 694 F. App'x 974, 982 (6th Cir. 2017) (determining the surprise to be "obvious" when a party untimely discloses witnesses that the other party neither "knew or could have known about the existence of").  Additionally, during discovery, Defendants requested the identity of all expert witnesses and the production of all expert

11

reports. (Doc. Nos. 54-2, 54-3.) Plaintiff responded that he would "disclose his expert witnesses in accordance with the pretrial order of this court." (*Id*.) Plaintiff's response indicates that he was aware of his duty, understood the Court's deadline, and chose not to disclose any expert witnesses by that deadline. To then disclose their identities four months later—and their reports over nine months later—must have been a surprise to Defendants. This factor weighs against Plaintiff.

Second is Plaintiff's ability to cure the surprise. The obvious cure was for Plaintiff to request more time prior to the March 2022 disclosure deadline. As the email correspondence attached to Defendants' Motion shows, Plaintiff knew he could not meet the Court's February 15, 2022, deadline, and asked Defendants for additional time. Defendants were amenable, and the parties informally agreed to a March 31, 2022, deadline. Why Plaintiff did not ask for additional time as the March 2022 deadline approached is unclear. Instead, Plaintiff waited over nine months to ask the Court for leave to cure his inability to meet the deadline.

Additionally, Dr. Paley provided his expert report to Plaintiff on January 26, 2022. And Ms. Pytlik provided her report to Plaintiff on July 29, 2022. Plaintiff therefore had Dr. Paley's report for nearly a year and Ms. Pytlik's report for over six months before finally disclosing them to Defendants in January 2023. In the intervening time, Plaintiff received Defendants' own expert report and Defendants deposed Mr. Jackson. (Doc. No. 54 at p. 9.) Plaintiff offers no reasonable explanation for his decision to delay providing these reports (despite having them in his possession) to Defendants until after Mr. Jackson's deposition and the filing of Defendants' Motions for Partial Summary Judgment.

Curing the surprise to Defendants would require the Court to reopen discovery and set new dispositive motion deadlines. In effect, Plaintiff is asking the Court to require Defendants, "the non-

defaulting party, to bear the effort and expense necessary to cure [Plaintiff's] failure to disclose." *EQT Prod. Co. v. Magnum Hunter Prod., Inc.*, 768 F. App'x 459, 469 (6th Cir. 2019).  This factor also weighs against Plaintiff.

Third is the extent to which the evidence would disrupt the trial.  Plaintiff repeatedly notes that the Court has not set a trial date for this case, and therefore, "[t]he delay in this matter has no impact on a trial date which has not been set."  (Doc. No. 48 at p. 3.)  Plaintiff is correct, and this factor weighs in his favor.[2]

Fourth is the importance of the evidence.  The timing of Plaintiff's Motion for Leave demonstrates the importance of Dr. Paley and Ms. Pytlik to Plaintiff's case.  As the Court further explains below, Defendants' Motion for Partial Summary Judgment to Cap Non-Economic Damages includes the following argument:

> Plaintiff has failed to identify the requisite medical expert testimony that Plaintiff sustained any permanent injury as a result of the accident or that the accident resulted in Plaintiff from [sic] suffering a substantial physical deformity, and, for this reason alone, the non-economic damages caps must apply.

(Doc. No. 40 at p. 8.)  Notably, it was only after receiving Defendants' Motion on November 14, 2022, that Plaintiff disclosed Dr. Paley's and Ms. Pytlik's expert reports.  And, indeed, in his Brief in Opposition to Defendants' Motion, Plaintiff argues, in part, that Dr. Yoon's anticipated expert testimony is relevant to the non-economic damages cap issue.  (Doc. No. 53 at pp. 10-11.)

---

[2] But even without a scheduled trial date, granting Plaintiff's motion would inevitably disrupt the case schedule and delay an eventual trial.  The Court would need to stay its ruling on Defendant's Motion for Partial Summary Judgment to Cap Non-Economic Damages, and it would need to reopen expert discovery.  This factor only slightly favors Plaintiff.  *Cf., Mortland v. Ohio State Univ.*, 2022 U.S. Dist. LEXIS 230977 at *11 (S.D. Ohio Dec. 22, 2022) (in a case where the court had yet to set a trial date, court found that allowing improperly disclosed expert evidence "could significantly disrupt the case schedule" and favored exclusion); *Pummell v. Burkes*, 2018 U.S. Dist. LEXIS 66095 at *8 (S.D. Ohio Apr. 19, 2018) (same).

But the importance of this expert evidence cuts both ways.  *See Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 220 (6th Cir. 2019) ("The more important the proof, the greater the effect of preclusion, but also the greater the harm in tardy disclosure.") (quoting *EQT Prod. Co. v. Magnum Hunter Prod., Inc.*, 2017 U.S. Dist. LEXIS 80288 at *17 (E.D. Ky. May 25, 2017)).  Knowing the importance of the medical expert testimony to his case, Plaintiff should have been attentive to his expert disclosure deadline.  And from Defendants' perspective, allowing Plaintiff's late disclosure of Dr. Paley's and Ms. Pytlik's expert reports makes the time Defendants spent preparing the Motion to cap non-economic damages wasted.  It also means that Defendants may spend more time (and money) drafting and filing additional motions based on Dr. Paley's and Ms. Pytlik's new evidence.  Therefore, this factor does not weigh in either party's favor.

The last factor is Plaintiff's explanation for his failure to disclose the evidence.  Plaintiff provides the following two explanations: (1) computer issues and (2) hope for a settlement.  Regarding the first explanation, Plaintiff asserts that in December 2022—eight months *after* Plaintiff's expert disclosures were due—his "server, email, and calendar . . . suffered what is believed to be at least a nationwide crash."  (Doc. No. 48 at p. 2.)  He further explains that he "has been in process of resolving a number of issues which were an outgrowth of the aforementioned issues since."  (*Id*. at p. 3.)  While the Court is sympathetic to IT issues, it is entirely unclear how computer problems eight months *after* the disclosures were due affected Plaintiff's ability to submit his disclosures by the deadline.  For the same reasons, Plaintiff's explanation that he failed to disclose the experts in March 2022 because he hoped to settle the case eight months *later* in December 2022 is not persuasive.  This last factor weighs strongly against Plaintiff.

14

On balance, three factors weigh against granting Plaintiff's Motion, one factor does not weigh in either party's favor, and only one factor weighs slightly in favor of granting it.  Accordingly, the Court excludes Dr. Paley and Ms. Pytlik as experts in this case.

### c.  Conclusion

In sum, the Court grants in part and denies in part Plaintiff's Motion for Leave and grants Defendants' Motion in Limine, as follows.  Dr. Yoon may testify as an expert witness; however, he may only testify to Mr. Jackson's treatment and must base his testimony on what he learned treating Mr. Jackson and what is in Mr. Jackson's medical records.  The Court excludes Dr. Paley's and Ms. Pytlik's expert testimony and reports.

### B.  Defendants' Motions for Partial Summary Judgment

The Court now turns to Defendants' Motions for Partial Summary Judgment to Cap Non-Economic Damages; on Punitive Damages; and on Negligent Entrustment, Negligent Hiring, Supervision, and/or Retention, and Negligent Inspection and Repair.  (Doc. Nos. 40-42.)

### a.  Standard of Review

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A dispute is 'genuine' only if based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party."  *Henderson v. Walled Lake Consol. Sch.*, 469 F.3d 479, 487 (6th Cir. 2006) (citing *Hedrick v. W. Res. Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004)).  "Thus, 'the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'"  *Cox v. Ky. DOT*, 53 F.3d 146, 150 (6th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  A fact is

"material" only "if its resolution might affect the outcome of the suit under the governing substantive law." *Henderson*, 469 F.3d at 487 (citing *Hedrick*, 355 F.3d at 451).

At the summary judgment stage, "[a] court should view the facts and draw all reasonable inferences in favor of the non-moving party." *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 628 (6th Cir. 2018) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  "[T]he moving party bears the initial burden of showing that there is no genuine dispute of material fact." *Ask Chems., LP v. Comput. Packages, Inc.*, 593 F. App'x 506, 508 (6th Cir. 2014) (citing *Anderson*, 477 U.S. at 256).  The moving party may satisfy this initial burden by "identifying those parts of the record which demonstrate the absence of any genuine issue of material fact." *Lindsey v. Whirlpool Corp.*, 295 F. App'x 758, 764 (6th Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, (1986)).  "[I]f the moving party seeks summary judgment on an issue for which it does not bear the burden of proof at trial," the moving party may also "meet its initial burden by showing that 'there is an absence of evidence to support the nonmoving party's case.'" *Id*. (quoting *Celotex*, 477 U.S. at 325).

Once the moving party satisfies its burden, "the burden shifts to the non-moving party who must then point to evidence that demonstrates that there is a genuine dispute of material fact for trial." *Ask Chems.*, 593 F. App'x at 508-09 (citing *Anderson*, 477 U.S. at 256).  "[T]he nonmoving party may not simply rely on its pleading, but must 'produce evidence that results in a conflict of material fact to be solved by a jury.'" *MISC Berhad v. Advanced Polymer Coatings, Inc.*, 101 F. Supp. 3d 731, 736 (N.D. Ohio 2015) (quoting *Cox*, 53 F.3d at 150).

16

**b. Defendants' Motion for Partial Summary Judgment to Cap Non-Economic Damages**

Defendants move the Court to cap Plaintiff's non-economic damages under Ohio Revised Code § 2315.18(B), which limits such damages to certain dollar amounts subject to two narrow exceptions.  (Doc. No. 40 at p. 4.)  They argue that neither of § 2315.18(B)'s two exceptions apply because Mr. Jackson "did not suffer any loss of limb or bodily organ system[,] . . . he is able to perform life sustaining activities[, and] . . . Plaintiff's alleged injury also does not amount to a permanent and substantial physical deformity."  (*Id*. at p. 5.)  Defendants contend that "[t]he surgical hardware present in Plaintiff's cervical spine is unnoticeable and there is no evidence that [it] has misshaped Plaintiff's body in any noticeable way."  (*Id*. at p. 7.)  Finally, Defendants note that "Plaintiff has not identified an expert medical witness that will opine that Plaintiff sustained any permanent and substantial physical deformity."  (*Id*.)

Plaintiff responds that, "although the record establishes issues of fact regarding Defendant's motion, "he needs additional time to complete discovery."  (Doc. No. 53 at p. 4.)  He points to Federal Rule of Civil Procedure 56(d) and argues that it is a basis for this Court to defer considering Defendants' Motion.  (*Id*. at pp. 4-5.)  Lastly, he argues that "Mr. Jackson's neck and back were totally natural prior to the crash . . . [and are] now unnatural and artificially deformed by way of internal metal installation."  (*Id*. at p. 8.)  Plaintiff asserts that "[t]he hardware in Mr. Jackson's neck is permanent and substantial" and warrants denial of Defendants' Motion.  (*Id*. at p. 11.)

The Court will first address Plaintiff's argument that this Court should defer considering Defendants' Motion for Partial Summary Judgment under Rule 56(d).  To receive relief under this Rule, "the non-movant must file an affidavit . . . that details the discovery needed, or file a motion for additional discovery."  *Zakora v. Chrisman (In re Est. of Zakora)*, 44 F.4th 452, 479 (6th Cir.

2022) (quoting *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 627 (6th Cir. 2002)). If the nonmovant elects to file a motion, it too "must be supported by a proper 'affidavit or declaration.'" *Sandusky Wellness Ctr., Ltd. Liab. Co. v. Medco Health Sols., Inc.*, 788 F.3d 218, 226 (6th Cir. 2015).

Here, Plaintiff did not file the required affidavit. The Court, therefore, denies his request for additional time to conduct discovery under Rule 56(d).[3] *See Unan v. Lyon*, 853 F.3d 279, 292 (6th Cir. 2017) ("We have observed that filing an affidavit that complies with Rule 56(d) is essential, and that in the absence of such a motion or affidavit, 'this court will not normally address whether there was adequate time for discovery.'") (quoting *Plott v. Gen. Motors Corp., Packard Elec. Div.*, 71 F.3d 1190, 1196 (6th Cir. 1995)).

Turning to the merits of Defendants' Motion, Ohio Revised Code § 2315.18(B) caps "the amount of compensatory damages that represents damages for noneconomic loss . . . [at] the greater of [$250,000] or an amount that is equal to three times the economic loss . . . to a maximum of [$350,000] for each plaintiff . . . or a maximum of [$500,000] for each occurrence." O.R.C. § 2315.18(B)(2). Section 2315.18(B)(3) provides, however, as follows:

---

[3] Even if the Court were to consider Plaintiff's request on its merits absent an affidavit, it would still fail. Courts are to consider six factors when deciding a Rule 56(d) motion: (1) when the plaintiff learned of the issue that is the subject of the desired discovery; (2) whether the desired discovery would change the ruling of the trial court; (3) how long the discovery period lasted; (4) whether the plaintiff was dilatory in his discovery efforts; and (5) whether the defendants were responsive to discovery requests. *F.T.C. v. E.M.A., Nationwide, Inc.*, 767 F.3d 611, 623 (6th Cir. 2014). "The main inquiry among these factors is whether the moving party was diligent in pursuing discovery." *Dowling v. Cleveland Clinic Found.*, 593 F.3d 472, 478 (6th Cir. 2010). Here, Plaintiff knew of his desired discovery concerning Mr. Jackson's medical condition since the beginning of the case. Yet he was dilatory in disclosing it to Defendants and has failed to provide a reasonable explanation for the delay. While Defendant asserts in his motion that "Mr. Jackson recently underwent additional surgery . . . in October of 2022" (Doc. No. 53 at p. 5), he provides no evidence of this alleged surgery, nor does he "affirmatively demonstrate" how the surgery's records "would enable him to 'adequately oppose the motion for summary judgment.'" *United States v. Rohner*, 634 F. App'x 495, 504 (6th Cir. 2015) (quoting *Wallin v. Norman*, 317 F.3d 558, 562 (6th Cir. 2003)). Finally, this Court has already denied Plaintiff's Motion to reopen expert discovery considering the same arguments Plaintiff now makes under Rule 56(d).

(3) There shall not be any limitation on the amount of compensatory damages that represents damages for noneconomic loss that is recoverable in a tort action to recover damages for injury or loss to person or property if the noneconomic losses of the plaintiff are for either of the following:

(a) Permanent and substantial physical deformity, loss of use of a limb, or loss of a bodily organ system;

(b) Permanent physical functional injury that permanently prevents the injured person from being able to independently care for self and perform life-sustaining activities.

O.R.C. § 2315.18(B)(3).  Section 2315.18(E)(2) authorizes parties to "seek summary judgment with respect to the nature of the alleged injury or loss to person or property, seeking a determination of the damages described in division (B)(2) of this section."  Generally, courts should lift the non-economic damages cap "for those suffering catastrophic injuries."  *Brandt v. Pompa*, 2022-Ohio-4525, 168 Ohio St. 3d 1489, 200 N.E.3d 286, ¶ 28 (quoting *Arbino v. Johnson & Johnson*, 2007-Ohio-6948, 116 Ohio St. 3d 468, 480, 880 N.E.2d 420, ¶ 60).

For the following reasons, the Court finds that Plaintiff has failed to establish that there exists a genuine issue of material fact with respect to either of the exceptions set forth in § 2315.18(B)(3).

With respect to the exception in § 2315.18(B)(3)(b), Plaintiff points to no evidence in the record that Mr. Jackson is unable to independently care for himself and perform life-sustaining activities.  Mr. Jackson testified that he still cooks by himself, showers by himself, and goes to the bathroom by himself, though these activities are sometimes "trying."  (Jackson Dep. at Tr. 225-29.) Although Mr. Jackson testified that his wife helps him, Mr. Jackson stated that he can survive on his own when she goes out of town and leaves him alone.  (*Id*. at 229.)  Therefore, and in the absence of any meaningful argument to the contrary, the Court finds that this exception does not apply to Mr. Jackson's injury.

19

With regard to § 2315.18(B)(3)(a), this exception is itself comprised of three separate exceptions: (1) permanent and substantial physical deformity, (2) loss of use of a limb, or (3) loss of a bodily organ system.  It is undisputed that Mr. Jackson has not lost the use of a limb or a bodily organ system.  The question, then, is whether Mr. Jackson's injury constitutes a "permanent and substantial physical deformity" under Ohio law.  Plaintiff argues that the metal hardware has "deformed" his neck.  (Doc. No. 53 at pp. 8, 10.)  Defendants counter that the metal hardware is "unnoticeable" and has not "misshaped Plaintiff's body in any noticeable way."  (Doc. No. 40 at p. 7.)

The only evidence before the Court regarding the metal hardware in Mr. Jackson's neck is (a) an x-ray of Mr. Jackson's neck and (b) Dr. Yoon's operative report.  (Doc. Nos. 53-1, 53-2.)  The x-ray shows what appears to be four pieces of metal hardware in Mr. Jackson's neck.  (Doc. No. 53-1.)  The operative report describes that Dr. Yoon "made a midline skin incision" in Mr. Jackson's neck and "put on the plate using screws" on his four neck vertebrae "in sequence."  (Doc No. 53-2.)

Courts struggle with what counts as a "deformity."  *E.g.*, *Schmid v. Bui*, 2020 U.S. Dist. LEXIS 249241 at *5 (N.D. Ohio Sep. 16, 2020) (sending case to jury where plaintiff underwent "six surgeries involving metal plates, nails, or other devices" and "had his hip replaced with a prosthetic," which resulted in "scarring and other physical distortions"); *Ross v. Home Depot USA Inc.*, 2014 U.S. Dist. LEXIS 133507 at *16 (S.D. Ohio Sep. 23, 2014) (denying partial summary judgment where plaintiff suffered from "multiple misshapen, unnatural, and distorted conditions" in knee and shoulder that required "significant amount of hardware to be implanted" into plaintiff's body); *Ohle v. DJO, Inc.*, 2012 U.S. Dist. LEXIS 140020 at *4 (N.D. Ohio Sep. 28, 2012) (sending case to jury where

20

plaintiff had a portion of her humerus bone "sawed off" and replaced with a metal prosthesis, and the surgery left multiple large, raised scars).

Common in these opinions is that there was some evidence of a visible manifestation of the internal hardware installed in the plaintiff's body, e.g., significant scarring or other physical distortions. While both parties imply Mr. Jackson has a scar from his surgery, there is no evidence of any scarring in the operative report or Mr. Jackson's deposition testimony. (Doc. No. 40 at p. 5; Doc. No. 53 at p. 10.)

Defendants cite to an Ohio appellate case, *Poteet v. MacMillan*, 12th Dist. Warren No. CA2021-08-071, 2022-Ohio-876, where the court referenced the dictionary definition of deformity and concluded that "[t]he key point is that a deformity must be *visible* or *noticeable*. A metal plate and screws are per se *not* a deformity, as a 'deformity' is a characteristic of the subject being deformed (in this case the person), rather than a foreign, internal, unobservable object." *Id*. at ¶ 20.

In this case, where the only evidence before the Court is an x-ray of internal metal hardware and an operative report explaining the procedure to implant that hardware, the Court finds the rationale in *Poteet* persuasive. The titanium bands in Mr. Jackson's neck are not visible to the naked eye. Nor is there any evidence that they have caused his neck to become misshapen in any visible way. *Cf. Setters v. Durrani*, 2020-Ohio-6859, 164 N.E.3d 1159, ¶ 38 (1st Dist.) (finding deformity where plaintiff's neck "began 'fall[ing] to the side' approximately one month after surgery" and would not stay straight). Plaintiff writes in his response that "[a]ny juror looking at the x-rays of Mr. Jackson's neck can reasonably conclude that he suffers from a permanent and substantial physical deformity of his neck." (Doc. No. 53 at p. 10.) But that is precisely the problem. Mr. Jackson's

21

injury is invisible to the naked eye. No reasonable jury could find an invisible injury to be a substantial physical deformity.

Accordingly, the Court grants Defendants' Motion for Partial Summary Judgment to Cap Non-Economic Damages. (Doc. No. 40.)

### c. Defendants' Motion for Partial Summary Judgment on Punitive Damages

Defendants next argue that Plaintiff is not entitled to punitive damages because there is no evidence that Ms. Woods acted with actual malice. (Doc. No. 41 at p. 5.) They assert that Ms. Woods followed all appropriate procedures before and after the accident. (*Id*.) Defendants further note that Plaintiff testified that the incident was an accident, and that Ms. Woods made a rookie mistake. (*Id*.) Lastly, Defendants argue that Transport America never ratified Ms. Woods's actions that caused the accident. (*Id*. at 6.)

Plaintiff counters that Defendants were aware that backing up a tractor-trailer was dangerous. (Doc. No. 53 at p. 12.) And that Transport America allowed Ms. Woods to operate a tractor-trailer knowing that she had issues backing up and making turns during her initial training period. (*Id*.) Plaintiff asserts that Defendants therefore "had a clear disregard for the safety of the public . . . when they released [Ms. Woods] onto the roadways." (*Id*.) Plaintiff concludes that "[i]t was only a matter of time before Ms. [Woods] harmed someone." (*Id*.)

Under Ohio law, a court may only award punitive damages in a tort case like this one where the plaintiff can establish that the defendant acted with actual malice. *Cabe v. Lunich*, 70 Ohio St. 3d 598, 601, 640 N.E.2d 159 (1994). Actual malice means:

> (1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or
> (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm.

*Id*.  The second category includes "extremely reckless behavior revealing a conscious disregard for a great and obvious harm."  *Id*. (quoting *Preston v. Murty*, 32 Ohio St. 3d 334, 335, 512 N.E.2d 1174 (1987)).  Something more than negligence is required.  *Id*.  "The concept requires a finding that the probability of harm occurring is great and that the harm will be substantial."  *Id*. (quoting *Preston*, 512 N.E.2d at 1176).  A plaintiff can also recover punitive damages against an employer that "knowingly authorized, participated in, or ratified actions or omissions of an agent or servant that so demonstrate" actual malice.  O.R.C. § 2315.21(C)(1).  Plaintiff bears the burden of proving actual malice by clear and convincing evidence.  O.R.C. § 2315.21(D)(4).

Plaintiff does not argue that Ms. Woods acted with hatred, ill will, or a spirit of revenge when the tractor-trailer she was driving collided with Mr. Jackson's tractor.  The question therefore is whether Ms. Woods acted with "a conscious disregard for [Mr. Jackson's] rights and safety that has a great probability of causing substantial harm."  *Cabe*, 70 Ohio St. 3d at 601.  Ms. Woods admitted in her deposition that "backing up in a tractor-trailer . . . is dangerous."  (Woods Dep. at Tr. 44.)  And she agreed that she "failed to make the correct adjustments to set up" for backing up.  (*Id*. at Tr. 88.)  But "a reckless actor, who only has knowledge of the mere possibility that his or her actions may result in substantial harm, is not behaving maliciously."  *Motorists Mut. Ins. Co. v. Said*, 63 Ohio St. 3d 690, 698, 590 N.E.2d 1228 (1992), *overruled on other grounds by Zoppo v. Homestead Ins. Co.*, 71 Ohio St. 3d 552, 644 N.E.2d 397 (1994).

The Court finds that Plaintiff has failed to establish a genuine issue of material fact that Ms. Woods acted with "actual malice."  To the contrary, the record before the Court demonstrates that at most, the accident was as Mr. Jackson described it: a "rookie mistake."  (Jackson Dep. at Tr. 238-39.)  Negligence is not actual malice and punitive damages are therefore inappropriate in this case.

23

*See, e.g., Terek v. Finkbiner*, 2015 U.S. Dist. LEXIS 124939 at *9 (N.D. Ohio Sep. 18, 2015) (granting partial summary judgment on punitive damages where tractor-trailer driver lost control, struck plaintiff, then fled scene of accident); *MacNeill v. Wyatt*, 917 F. Supp. 2d 726, 731 (S.D. Ohio 2013) (granting partial summary judgment on punitive damages where tractor-trailer driver failed to exercise reasonable care to stop his truck in time to avoid collision); *Alleman v. YRC*, 787 F. Supp. 2d 679, 685 (N.D. Ohio 2011) (granting partial summary judgment on punitive damages where tractor-trailer driver lost control on icy roads, struck and killed plaintiff's spouse, and pleaded guilty to reckless driving).  As Plaintiff has failed to demonstrate that Ms. Woods acted with actual malice, the Court need not consider whether Transport America ratified her actions that caused the accident. Accordingly, the Court grants Defendants' Motion for Partial Summary Judgment on Punitive Damages.

> **d. Transport America's Motion for Partial Summary Judgment on Negligent Entrustment, Negligent Hiring, Supervision, and/or Retention, and Negligent Inspection and Repair**

In its third (and final) Motion for Partial Summary Judgment, Transport America seeks judgment in its favor on the following claims: (1) negligent hiring, supervision, and/or retention; (2) negligent entrustment; and (3) negligent inspection and repair.  (Doc. No. 42.).  The Court will address these claims separately, as set forth below.

### 1.  Negligent Hiring, Supervision, and/or Retention

With respect to Plaintiff's claims for negligent hiring, supervision, and/or retention, Transport America argues that "[t]here is no evidence whatsoever that Ms. Woods was an incompetent driver and that it was foreseeable that Ms. Woods would be involved in an accident similar to the one subject

to this lawsuit." (Doc. No. 42 at p. 5.) Transport America asserts it appropriately screened Ms. Woods before hiring her and adequately trained her before she drove a tractor-trailer alone. (*Id*.)

Plaintiff counters that there is "overwhelming evidence of [Ms.] Woods's incompetence" prior to her accident with Mr. Jackson. (Doc. No. 52 at p. 5.) Plaintiff contends that Ms. Woods had no prior experience and committed several errors during her training period. (*Id*. at 6-7.) He concludes that Transport America was "on notice" that Ms. Woods would inevitably cause an accident. (*Id*.)

Transport America replies that if motor carriers were unable to hire new drivers, as the Plaintiff argues, "the entire trucking industry would eventually age out and collapse." (Doc. No. 55 at p. 1.) Transport America further asserts that it complied with all Federal Motor Carrier Safety Administration requirements when it hired and trained Ms. Woods. (*Id*. at p. 2.) Lastly, Transport America argues that Plaintiff "mischaracterizes" Ms. Woods's two prior accidents. (*Id*. at p. 3.)

Under Ohio law, a claim of negligent hiring, supervision, and retention requires Plaintiff to prove:

> (1) the existence of an employment relationship;
> (2) the employee's incompetence;
> (3) the employer's actual or constructive knowledge of such incompetence;
> (4) the employee's act or omission causing the plaintiff's injuries; and
> (5) the employer's negligence in hiring or retaining the employee as the proximate cause of the plaintiff's injuries.

*Watson v. City of Cleveland*, 202 F. App'x 844, 857 (6th Cir. 2006) (citing *Linder v. Am. Nat'l Ins. Co.*, 155 Ohio App. 3d 30, 2003-Ohio-5394, 798 N.E.2d 1190, ¶ 31 (1st Dist.)). Said another way, negligent hiring requires Plaintiff to "provide evidence that [Ms. Woods] 'had a past history of criminal, tortious, or otherwise dangerous conduct about which [Transport America] knew or could have discovered through reasonable investigation.'" *Darago v. Live Nation Worldwide*, 2022 U.S.

App. LEXIS 7725 at *11 (6th Cir. Mar. 21, 2022) (quoting *Byrd v. Faber*, 57 Ohio St. 3d 56, 61, 565 N.E.2d 584 (1991)).

Plaintiff's claim for negligent hiring rests on two facts: (1) that Ms. Woods had no commercial truck driving experience outside a training environment when Transport America hired her and (2) that Ms. Woods was unfamiliar with the Federal Motor Carrier Safety Administration regulations at the time of her hiring (Doc. No. 53 at p. 6.) First, as for Ms. Woods's lack of experience, Plaintiff is effectively asking the Court to find an employer negligent for hiring an otherwise qualified employee who lacks work experience. Transport America conducted an "extensive background check" on Ms. Woods before hiring her and found that she had (a) no moving violations and no vehicle accidents in the prior three years and (b) "a completely clean criminal history." (Rambo Aff. at ¶¶ 6, 7.) Inexperience, without more, falls short of a history of criminal, tortious, or otherwise dangerous conduct. *Compare Madera v. KTC Express, Inc.*, 2022 U.S. Dist. LEXIS 131859 at *18 (N.D. Ohio July 25, 2022) (denying defendant's summary judgment motion on negligent hiring claim where tractor-trailer driver did not obtain formal training, had an invalid CDL, and was not proficient in English) *with Ok Yeon Yoon v. K-Ltd. Carrier, Ltd.*, 2020 U.S. Dist. LEXIS 36161 at *23 (N.D. Ohio Mar. 3, 2020) (granting defendant's summary judgment motion on negligent hiring claim where a qualified tractor-trailer driver failed a mandated drug test years before being hired). No reasonable jury could find for Plaintiff on his negligent hiring claim with this evidence.

Second, Plaintiff argues that because Ms. Woods answered on her application that she was unfamiliar with Federal Motor Carrier Safety Regulations and misstated the expiration date of her then-unexpired medical card, Transport America was negligent in hiring her. (Doc. No. 52 at p. 2.) Plaintiff does not explain how these errors on Ms. Woods's application amount to incompetence or

much less how they were the proximate cause of Plaintiff's injuries.  Moreover, it is undisputed that Transport America complied with applicable Federal Motor Carrier Safety Administration hiring practices in hiring Ms. Woods.  (Sellner Dep. at Tr. 87.)  "[C]ourts have generally been unwilling to find that there were genuine issues of material fact as to negligent hiring and retention, so long as the employer complied with the hiring practices prescribed by the Federal Motor Carrier Safety Administration." *Gordon v. Turner*, 2016 U.S. Dist. LEXIS 84317 at *30 (E.D. Ky. June 29, 2016) (collecting cases).  Plaintiff does not direct this Court's attention to any authority to the contrary.  Thus, the Court finds that Transport America is entitled to summary judgment in its favor with respect to Plaintiff's negligent hiring claim.

Plaintiff's argument regarding Transport America's alleged negligent supervision of Ms. Woods is better developed.  Plaintiff argues that "Ms. Woods failed the Driver's Road Test per [Transport America's] own policy."  (Doc. No. 52 at p. 3.)  He also cites to Ms. Woods's "issues and pattern of difficulty judging distances when turning and backing" during the 21-day training program.  (*Id*. at p. 7.)  Lastly, he points to Ms. Woods's two prior accidents before her accident with Mr. Jackson.  (*Id*. at p. 8.)  To prevail on his claim of negligent supervision, Plaintiff must prove that Ms. Woods's third accident with Mr. Jackson was reasonably foreseeable to Transport America.  *Madera*, 2022 U.S. Dist. LEXIS 131859 at *19 (citing *Wagoner v. United Dairy Farmers*, 1st Dist. Hamilton No. C-990767, 2000 Ohio App. LEXIS 5320 at *5 (Nov. 17, 2000)).  Like negligent hiring, an act under a negligent supervision theory is "reasonably foreseeable 'if the employer knew or should have known of the employee's propensity to engage in similar criminal, tortuous, or dangerous conduct.'" *Herndon v. Torres*, 791 F. App'x 547, 555 (6th Cir. 2019) (quoting *Armaly v. City of Wapakoneta*, 3d Dist. Auglaize No. 2-05-45, 2006-Ohio-3629, ¶ 54).  In analyzing whether a vehicle accident is

reasonably foreseeable to an employer, courts "have considered a myriad of factors." *Id*. (collecting cases).

> These factors include whether the driver had been involved in other accidents, whether the driver participated in regular training, whether the driver was properly licensed, whether the driver could speak English, whether the employer conducted a background check of the employee, and whether the employer conducted a reasonable inquiry into the driver's abilities before hiring.

*Id*.

Here, Ms. Woods received regular training, had her CDL, and spoke English.  (Rambo Aff. at ¶ 6.)  Transport America conducted a background check on Ms. Woods and placed her with a trainer for 21 days to assess her abilities.  (Id. at ¶¶ 6, 9.)  While Plaintiff argues in his Response that Ms. Woods failed her road tests in contravention of Transport America's policy, the evidence before the Court says otherwise.  Transport America provided undisputed evidence that Ms. Woods passed both her initial and final road tests.  (Sellner Dep. at Tr. 152, 173) (*See also* Rambo Aff. at ¶¶ 8, 11).  Plaintiff does not explain how "[d]esignating [Ms.] Woods as having passed [was] a direct falsification according to Transport's own policy," or even what that policy was.  (Doc. No. 52 at p. 3.)

Thus, the only factor that weighs against Transport America is that Ms. Woods had two prior accidents before the accident with Mr. Jackson.  The first accident involved hitting a pothole on the highway—which Transport America deemed "non-preventable."  (Sellner Dep. at Tr. 175.)  And the second involved Ms. Woods failing to lower her trailer's landing gear all the way.  (*Id*.)  Neither accident involved another vehicle or concerned Ms. Woods's proficiency at turning or backing up.  No reasonable jury could describe the two prior accidents as similar or tortious, or even dangerous.  As such, the two prior accidents were insufficient to cause Transport America to foresee the accident

with Mr. Jackson.  *See, e.g., Sitton v. Massage Odyssey, LLC*, 2020-Ohio-4282, 158 N.E.3d 156, ¶ 13 (1st Dist.) (affirming grant of summary judgment for defendant on negligent supervision claim because employee's lie about having the requisite massage license did not make employee's sexual assault of client foreseeable to employer, i.e., prior conduct was neither similar nor tortious); *Wagoner*, 2000 Ohio App. LEXIS 5320 at *5 (affirming grant of summary judgment for defendant on negligent supervision claim because employee's prior flirtation with minors and boast of a sexual relationship with a minor—while himself a minor—did not make his later sexual assault of a minor foreseeable to employer, i.e., prior conduct was similar but not tortious or criminal); *cf. Diemer v. Minute Men, Inc.*, 2018-Ohio-1290, 110 N.E.3d 152, ¶ 27 (8th Dist.) (reversing grant of summary judgment for defendant on negligent promotion claim, which has same elements as negligent supervision, because employee's "adjudication as a sexual predator" and "prior history of raping women" made employee's rape and murder of coworker foreseeable to employer, i.e., prior conduct was both similar and criminal).  Accordingly, the Court grants Transport America's Motion for Partial Summary Judgment on Plaintiff's claims for on negligent hiring, supervision, and retention.

## 2.  Negligent Entrustment

Transport America also moves for judgment in its favor with respect to Plaintiff's claim for negligent entrustment.  (Doc. No. 42.)  Like negligent supervision, negligent entrustment requires Plaintiff to prove that Ms. Woods was "incompetent to operate [the tractor-trailer], and that [Transport America] knew—either through actual knowledge or through knowledge implied from known facts at the time of the entrustment—that [Ms. Woods] was unqualified or incompetent to operate the vehicle."  *Rieger v. Giant Eagle, Inc.*, 157 Ohio St. 3d 512, 2019-Ohio-3745, 138 N.E.3d 1121, ¶ 17

(citing *Gulla v. Straus*, 154 Ohio St. 193, 201, 93 N.E.2d 662 (1950)). Plaintiff's response does not address Transport America's Motion on negligent entrustment.

As an initial matter, the Court finds that Plaintiff abandoned his claim of negligent entrustment by not addressing it in his Response to Defendants' Motion for Partial Summary Judgment. The Sixth Circuit has recognized that "[its] jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment." *Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013); *see also Wierengo v. Akal Sec., Inc.*, 580 F. App'x 364, 369 n.1 (6th Cir. 2014) ("Akal moved for summary judgment on Wierengo's federal- and state-law claims. Wierengo did not discuss her state-law claims in her response brief, and the district court held that they were abandoned. We agree."); *Hicks v. Concorde Career Coll.*, 449 F. App'x 484, 487 (6th Cir. 2011) ("The district court properly declined to consider the merits of this claim because Hicks failed to address it in either his response to the summary judgment motion or his response to Concorde's reply brief.").

Even if the Court were to consider Plaintiff's claim, the only evidence in the record of Ms. Woods's alleged incompetence includes the issues noted during her 21-day training period and her two prior accidents. But Plaintiff must show that Ms. Woods's alleged incompetence is "pervasive" to survive summary judgment. *M.M. v. M.F.*, 8th Dist. No. 108957, 2020-Ohio-5082, ¶ 27 (citing *Hoff v. Minder*, 4th Dist. No. 13CA31, 2014-Ohio-3491, ¶ 13). "Ohio courts have held that '[i]solated incidents of failing to obey traffic laws . . . generally will not establish incompetence' for purposes of negligent entrustment claims." *Id.* (quoting *Hoff* ¶ 13). No reasonable jury could find Ms. Woods's challenges during training and her two prior accidents to be evidence of "pervasive" incompetence. *See Id.* (affirming grant of summary judgment for defendant on negligent entrustment claim where

30

driver admitted she drove "in excess of speed limit an average amount"); *see also Nocilla v. Bridges*, 2023 U.S. Dist. LEXIS 15741 at *11 (S.D. Ohio Jan. 30, 2023) (granting summary judgment for defendant on negligent entrustment where truck driver previously had CDL suspended for speeding and not paying ticket); *Marinkovic v. Hazelwood*, 2021 U.S. Dist. LEXIS 57768 at *18 (N.D. Ohio Mar. 26, 2021) (granting summary judgment for defendant on negligent entrustment where driver's insurer termed driver unsafe). Accordingly, the Court also grants Transport America's Motion for Partial Summary Judgment on negligent entrustment.

### 3. Negligent Inspection and Repair

Turning finally to Transport America's Motion regarding Plaintiff's claims for negligent inspection and repair, Transport America argues that Plaintiff's claims fail "because there is no evidence that the tractor trailer was in disrepair, let alone, any evidence that the condition or maintenance of the tractor-trailer played any role in this accident." (Doc. No. 42 at p. 8.) Plaintiff does not contest Transport America's Motion but instead states that he "will be filing for dismissal without prejudice" of the negligent inspection and repair claim. (Doc. No. 53 at p. 1.) In its Reply, Transport America asserts that it does not consent to Plaintiff dismissing this claim without prejudice. (Doc. No. 55 at p. 6.)

Plaintiff has not filed the promised motion to voluntarily dismiss under Federal Rule of Civil Procedure 41. And even if the Court were to construe Plaintiff's response as such a motion, dismissal without prejudice at this stage is inappropriate. Granting a dismissal under Rule 41(a)(2) is within this Court's sound discretion. *Grover by Grover v. Eli Lilly & Co.*, 33 F.3d 716, 718 (6th Cir. 1994) (citing *National Banque de Depots v. Nat'l Bank of Detroit*, 491 F.2d 753, 757 (6th Cir. 1974)). The question is whether Defendants would suffer "'plain legal prejudice' as a result of a dismissal without

prejudice, as opposed to facing the mere prospect of second lawsuit." *Id*. (citing *Cone v. W. Va. Pulp & Paper Co.*, 330 U.S. 212, 217 (1947)) (further citation omitted). Courts are to consider "such factors as the defendant's effort and expense of preparation for trial, excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, insufficient explanation for the need to take a dismissal, and whether a motion for summary judgment has been filed by the defendant." *Id*. "Importantly, plain legal prejudice results when a court permits dismissal '[a]t the point when the law clearly dictates a result for the defendant . . . .'" *Smith v. Holston Med. Grp., P.C.*, 595 F. App'x 474, 477 (6th Cir. 2014) (quoting *Grover*, 33 F.3d at 719).

This case is at that point. Defendants have exhausted effort and expense in litigating the case to this stage. Plaintiff provides no explanation why he now needs a dismissal. And, most importantly, Transport America has moved for summary judgment on Plaintiff's claim. Accordingly, the Court finds that dismissal without prejudice is inappropriate. The Court grants Transport America's Motion for Partial Summary Judgment on Plaintiff's claims for negligent inspection and repair.

## IV. Conclusion

For the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART Plaintiff's Motion for Leave to File Disclosure of Experts Out of Time (Doc. No. 48) and GRANTS Defendants' Motion in Limine to Exclude Improperly Disclosed Experts (Doc. No. 54). Additionally, the Court GRANTS Defendants' Motions for Partial Summary Judgment to Cap Non-Economic Damages (Doc. No. 40); on Punitive Damages (Doc. No. 41); and on Negligent Entrustment, Negligent Hiring, Supervision, and/or Retention, and Negligent Inspection and Repair (Doc. No. 42).

**IT IS SO ORDERED.**

                                        *s/Pamela A. Barker*

Date:  April 24, 2023                       PAMELA A. BARKER
                                            U. S. DISTRICT JUDGE